UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSE RODRIGUEZ, | ) | CASE NO. 3:11CV2437 |
| | ) | |
| PETITIONER, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | |
| WARDEN, LONDON CORRECTIONAL INSTITUTION, | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | |
| RESPONDENT. | ) | |
| | ) | |

On November 9, 2011, the above-captioned case was transferred to this district from the United States District Court for the Southern District of Ohio. (Doc. No. 25.)

Now before the Court is respondent's motion (Doc. No. 8) to dismiss the petition for writ of habeas corpus filed by Jose Rodriguez ("Rodriguez" or "petitioner") pursuant to 28 U.S.C. § 2254. (Doc. No. 2.) Also before the Court is petitioner's motion to stay. (Doc. No. 23.)[1] Petitioner is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to a journal entry of sentence in the case of *State of Ohio vs. Rodriguez*, Case No. 07-CR-212 (Wood County 2008). For the reasons set forth below, the motion to stay is **DENIED** and the motion to dismiss is **GRANTED**.

---

[1] The petition was originally filed in the United States District Court for the Southern District of Ohio on December 22, 2010. The petition was not signed and verified. Upon the court's order, on June 15, 2011, petitioner filed an affidavit attesting that everything in his original petition was declared "under penalty of perjury." (Doc. No. 17.) The motion to dismiss was filed on March 21, 2011. At the time the case was transferred, the motion to dismiss had been fully briefed. (*See* Doc. Nos. 9, 16, 17 and 22.) The motion to stay was filed on October 6, 2011. It has not been responded to or opposed, probably because the Southern District of Ohio previously denied another motion to stay. (*See* Doc. Nos. 15 and 21.) In view of the Court's ruling with respect to the entire petition, there is no reason to grant a stay. Therefore, Doc. No. 23 is **DENIED**.

## I.

The June 2007 term of the Wood County grand jury indicted Rodriguez on one count of trafficking in marijuana with two forfeiture specifications. (Doc. No. 8, Ex. 1.)[2] Represented by counsel,[3] Rodriguez entered a plea of not guilty (Ex. 2), and filed a motion to suppress evidence from a warrantless search of two vehicles (Ex. 3). In reviewing Rodriguez's conviction during his direct appeal, the state appellate court found the following facts to be relevant to his case:

> {¶ 5} [...] A suppression hearing commenced on August 14, 2007. Agent Mark Apple, an investigator with the Ohio Attorney General's Office, Criminal Division, testified that on June 1, 2007, he was working in an undercover capacity when he went to the Meijer's store in Rossford, Ohio with a confidential informant. The informant had arranged a meeting with Luis Melendez. The purpose of the meeting was to purchase marijuana. In the store, Luis Melendez, accompanied by appellant, told Agent Apple that they had 80 pounds of marijuana for sale for $675. Agent Apple agreed to the price. He told appellant and Melendez that the money was 15 minutes away in Bowling Green, Ohio.
>
> {¶ 6} Appellant and his son, Scott Rodriguez, got into a Chevy S10 pick-up truck. Behind appellant was Agent Apple in his vehicle. Behind Agent Apple were Melendez and his passenger, Kyle Tolka, in a Ford F150 pick-up truck. The three vehicles headed down I-75 towards Bowling Green.
>
> {¶ 7} Agent Mike Ackley, a Wood County Sheriff's deputy, testified that he assisted in the investigation with Agent Apple. He testified that he knew what the suspects' trucks looked like. After receiving information that Melendez, accompanied by appellant, had offered to sell Agent Apple and his informant 80 pounds of marijuana, Ackley decided to make an investigative stop of the two pick-up trucks. The stop and subsequent search led to appellant's drug trafficking charge. Ackley testified that he decided to stop the trucks before they arrived in Bowling Green to ensure the safety of Agent Apple.
>
> [...]
>
> {¶ 16} Among those witnesses who testified at trial were Melendez, Tolka, confidential informant Saul Ramirez, Agent Apple and Agent Ackley.

---

[2] Hereafter, unless otherwise indicated, all references to exhibits are to those exhibits contained in Doc. No. 8.

[3] Rodriguez was represented by Attorney Sheldon Wittenberg.

Based on their experience, Agents Apple and Ackley were both deemed by the court as experts in drug organizations and testified as to how drug organizations generally work. Testimony of the events and circumstances leading up to the arrest are as follows.

{¶ 17} Agent Apple was involved in the present drug transaction in an undercover capacity, working with Ramirez. He testified that he was in constant communication with Ramirez on May 31, 2007, and that he and Ramirez set up a meeting at a Meijer store in Rossford, Ohio on June 1, 2007. Agent Apple also testified that a briefing was held on May 31, 2007 with law enforcement agencies in the area. There it was decided that a traffic stop would be conducted on anyone who showed up to meet with Ramirez and Agent Apple at the Meijer store on June 1, 2007.

{¶ 18} At the store, Agent Apple and Ramirez discussed the price of the marijuana with Melendez. Appellant was not a part of the discussion about price; however, Agent Apple testified that afterwards, appellant shook his hand and talked about how they wanted to "get out of there because there were too many cops around."

{¶ 19} Agent Ackley testified that he and his team pulled over the S10 and the F150 pick-up trucks per instructions to look out for two pick-up trucks, one smaller one and one larger white one. He testified that he was present during the search of both vehicles, and that the marijuana was found in the F150 truck. The registration for the F150 truck was found in the S10 truck, and was in appellant's name. He also testified that appellant had a little over $900 in cash on his person.

{¶ 20} Ramirez testified that he had never met appellant prior to the meeting at the Meijer store, but that he shook both appellant's and appellant's son's hands as they were exiting the store. He also testified that he did have conversations with someone on a two way radio, and that Melendez told him the conversations were with appellant.

{¶ 21} Ramirez, a former drug dealer, testified that he knew Melendez before the present drug transaction. Ramirez testified that Melendez had begun as a mule and then started dealing drugs himself. According to Ramirez' [sic] testimony, a "mule," or driver, is paid to transport the drugs and would be someone who is trusted by the drug "supplier." He testified that when there is more than one vehicle traveling, it is common for the supplier to either be the "lead" vehicle or to be following behind the mule. He also testified that Melendez had offered to sell him a kilo of cocaine a few weeks before the present transaction.

{¶ 22} Melendez testified that he had met appellant in Texas, and that they had known each other for nine years. Melendez testified that he met with

> appellant, his son, and Tolka in Indianapolis, and the four of them then traveled to Chicago. He claimed that once in Chicago, appellant and appellant's son left with the F150 pick-up truck and when they returned it contained the marijuana. Melendez also testified that he received $10,000 from a customer, which he gave to appellant. He claimed that out of that, appellant paid him $2,000 for his role in the drug transaction, and $4,000 was sent via Western Union in four separate transactions by appellant, appellant's son, Tolka, and himself.
>
> {¶ 23} Melendez testified that appellant was not a party to any of the conversations about the drug transaction at the Meijer store, but that appellant called him afterwards, when they were on the freeway, and told him that he and his son had a feeling "they were cops." Melendez also testified that he had been transporting marijuana for appellant for months.
>
> {¶ 24} Tolka testified that he has known appellant for about a year and that he became involved in the present drug transaction because appellant's son asked him if he wanted to "make some money."

(Ex. 20.) The forfeiture issues were not presented to the jury. The jury found Rodriguez guilty as charged in the indictment. (Ex. 13.) On January 31, 2008, the trial court sentenced Rodriguez to a mandatory term of eight years imprisonment. (Ex. 15.)

On February 29, 2008, represented by new counsel,[4] Rodriguez timely filed his direct appeal (Ex. 16), raising two assignments of error:

> <u>Argument of Assigned Error I</u>: Whether the police officer whose order effectuated the felony vehicle stop that resulted in the warrantless stop, arrest, and search of Appellant had the requisite probable cause to do so at the time.
>
> <u>Argument of Assigned Error II</u>: Whether there was sufficient evidence to sustain Appellant's conviction on the offense charged in the indictment.

(Ex. 17.) On August 24, 2009, the state appellate court overruled Rodriguez's assignments of error and affirmed the judgment of the trial court. (Ex. 20.) On September 8, 2009, Rodriguez, acting *pro se*, moved for reconsideration pursuant to Ohio App. R. 26(A) (Ex. 21); the state appellate court denied this motion on September 29, 2009 (Ex. 22).

---

[4] Rodriguez was represented on appeal by Attorney Lawrence J. Daly.

4

Still represented by his appellate counsel, Rodriguez filed a timely notice of appeal to the Ohio Supreme Court (Ex. 23), asserting a single proposition of law:

> The Proposition of Law: Because a constitutionally valid arrest without a warrant requires that the arresting officer have probable cause at the time when the seizure is made, *State v. Timson* (1974), 38 Ohio St.2d 122, 311 N.E.2d 16, a warrantless felony arrest is not validly constitutional when the evidence adduced from testimony at the pre-trial hearing on a Crim. R. 12(B)(3) suppression motion shows that the policeman who ordered and carried out the arrest for a felony not committed in his presence lacked, at the time of the arrest, sufficient information, based on facts and circumstances within his knowledge or derived from a reasonably trustworthy source, to warrant a prudent man in believing that the arrestee had committed or was in the process of committing a felony, see *Beck v. Ohio* (1964), 379 U.S. 89, 13 L. Ed. 2d 142, 85 S. Ct. 223.

(Ex. 24.) On December 30, 2009, the Ohio Supreme Court denied leave to appeal. (Ex. 26.)

On March 1, 2010, now proceeding *pro se*, Rodriguez filed in the trial court a motion requesting resentencing to correct a void sentence, claiming that the trial court had failed to fully inform him of the potential consequence of violating post release control. (Ex. 27.) On March 8, 2010, the trial court entered an order denying this motion as meritless. (Ex. 28.)

On March 22, 2010, Rodriguez filed a timely *pro se* appeal (Ex. 29) from the trial court's denial of his motion to resentence, asserting a single assignment of error:

> FIRST ASSIGNMENT OF ERROR: The trial court abused its discretion when it denied appellant's motion for re-sentencing to correct a void sentence because the sentencing transcript indicates the mistake made by the judge when advising appellant about post release control as part of the sentence and the consequences he could receive for violating the conditions of post release control after his release from prison.

(Ex. 30.) On November 12, 2010, the state appellate court overruled Rodriguez's assignment of error and affirmed the trial court's judgment on sentencing. (Ex. 32.) Rodriguez did not appeal this decision to the Ohio Supreme Court.

5

On July 21, 2010, Rodriguez filed in the trial court a motion for public records pursuant to Ohio Rev. Code § 149.43(B)(8) (Ex. 33), and a motion for findings of fact and conclusion of law (Ex. 34). On August 30, 2010, the trial court denied the motions on the grounds that the court was not in possession of or responsible for the items requested, that the items were not public records within the meaning of § 149.43, and that the requested items would not provide the basis for a justiciable claim. (Ex. 35.) On September 9, 2010, Rodriguez moved the court to reconsider (Ex. 36); the court denied this motion on September 20, 2010 (Ex. 37).

On September 27, 2010, proceeding *pro se*, Rodriguez timely appealed the trial court's decision (Ex. 38), asserting a single assignment of error:

> Assignment of Error One: The trial court erred and/or abused its discretion when it failed to make a finding that the information sought in the public record by the defendant either is or not [sic] necessary to support what appears to be a justifiable claim of the Appellant.

(Ex. 39.) On March 25, 2011, the state appellate court affirmed the judgment of the trial court. (Doc. No. 22, Ex. A.) Rodriguez moved for reconsideration (*id*., Ex. B), and the state appellate court denied his motion on April 27, 2011 (*id*., Ex. C). Rodriguez did not appeal this decision to the Ohio Supreme Court.

On September 21, 2010, Rodriguez moved in the state appellate court to file additional pages in his Ohio App. R. 26(B) motion to reopen his appeal. (Ex. 40.) On October 21, 2010, the state appellate court found that Rodriguez could not supplement a Rule 26(B) application because no such application was pending before the court and, if one were filed, it would be untimely. (Ex. 42.)

6

On December 3, 2010, Rodriguez filed in the Ohio Supreme Court a notice of appeal (Ex. 43) from the state appellate court's decision regarding his Rule 26(B) application. On March 2, 2011, the Ohio Supreme Court denied Rodriguez leave to appeal and dismissed his appeal as not involving any substantial constitutional question. (Ex. 45.)

On December 16, 2010, Rodriguez filed in the trial court a *pro se* petition for post-conviction relief pursuant to Ohio Rev. Code § 2953.21, asserting three grounds for relief:

> Ground for Relief No. 1:[5] Petitioner was deprived [of] his due process rights and right to effective assistance of trial counsel, when counsel failed to get statements that were hidden willfully and suppressed by the prosecution. These statements exonerated petitioner, prosecution misconduct may support post-conviction petition R.C. § 2953.21.
>
> Ground for Relief No. 2: Petitioner states he was deprived of exculpatory evidence that was in the State's possession about a raid that took place in Oakhurst Indianapolis IN. Petitioner's attorney was told of the raid and seizure of 200 pounds of marijuana seized. The prosecution suppressed the exculpatory evidence of the raid after questioned by John Potts. Petitioner Rodriguez told his trial counsel about the raid. Trial counsel failed to investigate the seizure of 200 pounds of marijuana seized from the Melendez home, which was favorable to the Petitioner's case.
>
> Grounds [sic] for Relief No. 3: The prosecution committed prosecutor [sic] misconduct when said prosecutor suppressed the Falcon CD (Audio). Twelve minutes of the CD was [sic] suppressed, namely Kip Lewton's report of the incident and stop. Further, the Beowolf was suppressed in its entirety.

(Ex. 46) (punctuation altered from the original). On January 10, 2011, the trial court dismissed Rodriguez's petition as untimely filed. (Ex. 47.)

On February 2, 2011, Rodriguez timely appealed the decision of the trial court to the state appellate court. (Ex. 48), asserting a single assignment of error:

> The trial court abused its discretion when it overruled the defendant's post-conviction petion [sic] for being filed untimely.

---

[5] Rodriguez actually characterized this as "First Error for Review." (Doc. No. 8, Ex. 45 at 8.)

7

(Doc. No. 22, Ex. G) (punctuation altered from the original). The state appellate court affirmed the judgment of the trial court. *State v. Rodriguez*, No. WD-11-011, 2011 WL 6930328 (Ohio Ct. App. Dec. 30, 2011).[6] There is no record that Rodriguez appealed this decision to the Ohio Supreme Court.

On December 22, 2010, Rodriguez filed his *pro se* petition for a federal writ of habeas corpus, asserting three grounds for relief:

> GROUND ONE: Petitioner's constitutional rights under the Fourth Amendment of the United States Constitution was [sic] violated when the trial court denied petitioner's Criminal R.12(B)(3) suppression motion that claims the police officer who ordered and carried out the stop of petitioner's vehicle and arrest of petititoner [sic] and his passenger for an alleged felony crime of drug trafficking in marijuana not committed in his presence. The officer lacked knowledge and information derived from other police at the time of conduct the stop and arrest. Based on facts and circumstances within the police officer's personal knowledge to warrant a prudent man into [sic] believing petitioner [sic] had committed or was in the process of committing a felony offense. Additionally petitioner's constitutional rights under the United States Supreme Court in **Beck v. Ohio** 1964 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 were violated by the State Court. [...]
>
> GROUND TWO: Petitioner's constitutional rights to effective assistance of trial counsel as guaranteed by the Sixth Amendment to the United States Constitution and the United States Supreme Court decision in McMann v. Richardson, 397 U.S. 759 711, n. 14, 90 S.Ct 144 (1970) and Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984) was [sic] violated when he recieved [sic] ineffective assistance of trial counsel prior and during the suppression hearing. [...]
>
> GROUND THREE: Petitioner's constitutional rights to due process under the Fifth and 14th Amendment [sic] of the United States Constitution were violated [and] Section 16 Article I of the Ohio Constitution when the state prosecutor suppressed the Falcon, Cd, Audio, and Beowulf audio recordings of events of the alleged transaction on June 1, 2007. In the instant case the prosecution intentionally suppressed 12 minutes of the audio recordings that defines [sic] and disclosed the police premachure [sic] actions of the illegal stop and arrest of the Petitioner. [...]

---

[6] This decision is not in the record before this Court; however, the Court may take judicial notice of the decision.

(Doc. No. 2) (some capitalization and punctuation altered from the original; supporting facts not quoted).[7]

Respondent filed a motion to dismiss on March 21, 2011. (Doc. No. 8.) Rodriguez filed a response on June 15, 2011. (Doc. No. 16.) Thus, the motion to dismiss is ripe for decision.

## II.

**A.  Jurisdiction**

"Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. [...] Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application." 28 U.S.C. § 2241(a) & (d). This Court has jurisdiction over Rodriguez's petition since Wood County is within this Court's geographic jurisdiction.

**B.  Evidentiary Hearing**

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings. 28 U.S.C. § 2254(e)(2). There is no need for an evidentiary hearing in the instant case. All of Rodriguez's claims involve legal issues that can be independently resolved without additional factual inquiry.

---

[7] On January 15, 2012, after the case was transferred to this Court, Attorney Eric J. Allen appeared on petitioner's behalf. Mr. Allen has made no attempt to amend the petition or the response to the motion to dismiss.

C.    **Exhaustion of State Remedies**

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus. 28 U.S.C. § 2254(b) and (c); *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. McMackin*, 935 F.2d 790, 793 (6th Cir. 1991). If any state procedures for relief remain available, the petitioner has not exhausted state remedies. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a federal constitutional context to exhaust state remedies properly; it is not sufficient that all the facts supporting his federal habeas petition may have been before the state courts. *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989). "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Picard*, 404 U.S. at 275 (citations omitted); *see also Harris v. Rees*, 794 F.2d 1168, 1174 (6th Cir. 1986). "The exhaustion requirement is satisfied when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

The requirement that petitioners exhaust state remedies is a matter of comity between the federal government and the states:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. [...] Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."

*Rose v. Lundy*, 455 U.S. 509, 518 (1982) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)) (other citations omitted). Because exhaustion is a matter of comity, a petition containing unexhausted claims may be denied on the merits. 28 U.S.C. § 2254(b)(2).

Rodriguez has no state remedies available for his claims. Because no state remedies remain available to him, Rodriguez has exhausted state remedies.

**D.     Procedural Default**

Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law [...] not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Procedural default occurs when a petitioner fails to fairly present his claims to the highest state court in a federal constitutional context. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Harless*, 459 U.S. at 6-7. Moreover, a failure to present a claim to the highest court in the state deprives a federal court hearing a habeas petition of jurisdiction on that issue. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).

If the state argues that a petitioner has procedurally defaulted his claims, the Court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. [...] Second, the court must decide whether the state courts actually enforced the state procedural sanction. [...] Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. [...] This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. [...] [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate [...] that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (citations omitted). A default also will be excused if petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750 (internal quotation marks omitted) (citations omitted).

Respondent contends that Rodriguez has defaulted his second and third grounds for relief. Rodriguez raised his second and third grounds for relief, ineffective assistance of trial counsel and a due process violation resulting from prosecutorial "suppression" of evidence, in an application for post-conviction relief. The trial court dismissed his application as untimely. Rodriguez appealed the dismissal of his application as untimely to the state appellate court. At the time he filed the instant petition, that court had not yet ruled; however, on December 30, 2011, the court of appeals entered its judgment affirming the trial court. According to the website of the Clerk of the Supreme Court of Ohio, Rodriguez filed a notice of appeal on February 13, 2012.

The trial court and state appellate court both rejected Rodriguez's application for post-conviction relief as untimely. This Court has no reason to believe that the Ohio Supreme Court will accept the appeal. Ohio's limitations on the scope of postconviction relief are an

adequate and independent state ground on which Ohio can rely to foreclose review of a federal constitutional claim. *See, e.g., Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998) ("[A]ppellant never raised this specific issue on direct appeal to the Ohio Court of Appeals and the Ohio Supreme Court and is now barred from doing so because of procedural default.") (citation omitted). Thus, the state courts' rejection of Rodriguez's application for post-conviction relief as untimely is a ground that forecloses habeas review. Moreover, as Rodriguez has failed to timely present these claims to the highest court in the state, this Court is without jurisdiction to hear these issues under § 2254. Rodriguez's second and third grounds for relief have been procedurally defaulted.

Rodriguez also fails to demonstrate cause and prejudice for his default or demonstrate that enforcing the default would result in a manifest miscarriage of justice. Consequently, Rodriguez's second and third grounds for relief must be dismissed as procedurally defaulted.

### III.

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus. As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence. *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000). Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction. *Carey*, 549 U.S. at 74.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court. Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court). A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result. *Id.* at 405-06. A decision involves an "unreasonable application" of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand. *Id.* at 413.

Federal habeas relief "does not lie for errors of state law," *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990), and "federal courts must defer to a state court's interpretation of its own

rules of evidence and procedure." *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1998) (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)). A federal habeas court does not function "as an additional state appellate court to review a state court's interpretation of its own law or procedure." *Id*. (quoting *Oviendo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)).

In his remaining ground for relief, Rodriguez contends that his Fourth Amendment rights were violated (1) when his car was stopped and searched by a police officer without sufficient knowledge to provide probable cause for the stop and search, and (2) when the trial court failed to suppress the fruits of this search. Respondent replies that this claim is not directly cognizable in habeas proceedings.

Habeas corpus is not generally available on the ground of a violation of rights protected by the Fourth Amendment if the petitioner has had an opportunity to present the Fourth Amendment claims in the state courts. The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976) (footnotes omitted).

The determination as to whether a petitioner has had "an opportunity for full and fair litigation of a Fourth Amendment claim" requires

> a district court to make two distinct inquiries in habeas proceedings. Initially, the district court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism.

*Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982) (citations omitted). The Sixth Circuit has determined:

> [t]he mechanism provided by the State of Ohio for the resolution of fourth amendment claims is, in the abstract, clearly adequate. Ohio R. Crim. P. 12 provides an adequate opportunity to raise fourth amendment claims in the context of a pretrial motion to suppress, as is evident in the petitioner's use of that procedure. Further, a criminal defendant, who has unsuccessfully sought to suppress evidence, may take a direct appeal of that order, as of right, by filing a notice of appeal. See Ohio R. App. P. 3(A) and Ohio R. App. P. 5(A). These rules provide an adequate procedural mechanism for the litigation of fourth amendment claims because the state affords a litigant an opportunity to raise his claims in a fact-finding hearing and on direct appeal of an unfavorable decision. *See O'Berry v. Wainwright*, 546 F.2d 1204, 1213 (5th Cir. 1977).

*Id.* The Court must, therefore, make the second inquiry and determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism.

The "fact-finding hearing" referenced by *Riley* is the sort contemplated by *Townsend v. Sain*, 372 U.S. 293 (1963), *rev'd on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992), which mandates factual determinations "fairly supported by the record" and a "factfinding procedure [...] adequate for reaching reasonably correct results." *Id.* at 316. In reviewing such an evidentiary hearing, absent "egregious error in the application of fourth amendment principles[,]" federal courts must presume "that state courts are as capable of deciding fourth amendment issues as federal courts." *Riley*, 674 F.2d at 526.

Under some circumstances, egregious error may be grounds for finding that a petitioner has been denied a full and fair hearing:

> When a petitioner alleges egregious error in the application of fourth amendment principles, of a magnitude and nature similar to the state court error present in *Gamble* [*v. Oklahoma*, 583 F.2d 1161 (10th Cir. 1978)], however, a federal habeas court might be justified in concluding that an opportunity for a full and fair hearing had not been afforded the petitioner.

16

*Riley*, 674 F.2d at 526. In *Gamble*, the state courts failed to apply *Brown v. Illinois*, 422 U.S. 590 (1975), which held that merely giving a Miranda warning is insufficient to allow admission of evidence resulting from a Fourth Amendment violation and that specific factors should be considered in deciding whether improperly-obtained evidence should be admitted. The Court in *Gamble* noted that the state courts had mistakenly failed to cite *Brown*, failed to apply the *Brown* factors, and, contrary to *Brown*, found that a Miranda warning alone was sufficient to make improperly obtained evidence admissible. *See Gamble*, 583 F.2d at 1163.

In the present case, the suppression hearing included testimony by Agent Mark Apple ("Apple"), an investigator with the Bureau of Criminal Investigations of the Ohio Attorney General's Office, and Agent Michael Ackley ("Ackley"), a Wood County Deputy Sheriff assigned to the Drug Enforcement Administration in Toledo, Ohio. (Doc. No. 8, Ex. 41, Suppression Hearing Transcript, Aug. 14, 2007, ["Tr."] 4, 33.)[8] Apple's testimony related in part to a report that he had written (Tr. at 7), two pages of which are in the record, in the form of an exhibit attached to Rodriguez's direct appeal brief (Doc. No. 8-1, Ex. 39, ECF pp. 268-69 ["Report"]).

Apple testified that the drug buy involving Rodriguez had been assisted by a confidential source ("CS") who arranged a meeting with Luis Melendez. (Tr. 5, 9-10, 25.) On June 1, 2007, the CS, who was with Apple, received a phone call from Melendez advising that the drug sellers, in two cars, were getting off the Ohio Turnpike at Perrysburg, Ohio. (Tr. 25; Report ¶ 4; *see also* Tr. 46.) At Apple's direction, the CS told Melendez to meet them at the Meijer's Store on U.S. Rte. 20 in Rossford, Ohio. (Report, ¶ 4.) The CS was fitted with a

---

[8] The page numbers cited for this transcript are the actual transcript's page numbers, not the page numbers applied by the CMECF system in a header at the top of each page.

"Beowulf recorder," which was turned on, and Apple was fitted with a "Falcon video and audio recorder," which was also activated. (Report, ¶ 5; Tr. 23.) The two went to the Meijer's Store followed by Agent Kip Lewton. (Report, ¶ 5.)

Apple and the CS met Melendez inside the Meijer's Store. There, in the presence of Rodriguez, they discussed with Melendez a price of $675 per pound for about 80 pounds of drugs in four bundles. (Tr. 5, 6-7, 17.)[9] Apple further testified that, upon conclusion of the discussion, he told Melendez and Rodriguez that the money for the deal was at a house fifteen minutes away, down I-75, in Bowling Green, Ohio. Apple and Rodriguez shook hands and Rodriguez said, "[D]own 75, I-75." When Apple confirmed that, Rodriguez replied, "[L]et's get going there are a lot of cops in the area." (Tr. 7, 15, 17, 28.)

Apple testified that he and the CS left the Meijer's Store in Apple's vehicle and Melendez left in a separate vehicle (a white F150 truck). Rodriguez was in a third vehicle (a Chevy S10 with Indiana registration). (Tr. 8, 31; Report, ¶ 6.) The CS and Melendez were talking on phones. Melendez advised the CS and Apple to wait for the third vehicle (Rodriquez's) to lead the way down I-75. (Tr. 28-29, 30-31; Report, ¶ 6.) They got on I-75 with Rodriguez in the lead,[10] followed by Apple and the CS, followed by Melendez.[11] (Tr. 29, 31.)

Apple also testified that members of the Wood County Sheriff's Department and of the Bowling Green Police Department pulled the vehicles over for a pre-arranged stop.[12] (Tr. 11, 14, 31.) Prior to meeting with the sellers, the agents had planned to lead the sellers down I-75

---

[9] Apple admitted that Rodriguez did not join in this discussion. (Tr. 12, 14, 30.)

[10] Rodriguez's son, Scott Rodriguez (Tr. 22), who had been serving as a look-out at the Meijer's Store (Tr. 19), was also in this vehicle. (Tr. 6, 8; Report, ¶¶ 7, 16.)

[11] Another look-out, Kyle Tolka (Report, ¶ 6; Tr. 18), was in the vehicle with Melendez. (Tr. 8, 31; Report, ¶ 16.)

[12] Apple confirmed that, had there been no suspect, no discussion at the Meijer's Store, and no decision to drive to Bowling Green for payment, there would have been no stop of any vehicles. (Tr. 26.)

under the pretext that the money for the drugs was in a house in Bowling Green, Ohio (Tr. 7, 11) and, while doing so, to stop the cars (Tr. 11, 12) so as to conduct a search for drugs. (*See also* Tr. 37.)

Agent Ackley testified that he had been in constant communication with Apple and Agent Lewton on June 1, 2007. (Tr. 33-34, 45-46.) According to Ackley, Apple had described the vehicles that Melendez and Rodriguez were driving and described the conversations he had with Melendez and Rodriguez. (Tr. 34, 46.) Ackley made the decision to make the stop[13] and participated in it. (Tr. 34, 46-47.) He approached the vehicle driven by Melendez and smelled marijuana. A search discovered five packages of marijuana in the vehicle driven by Melendez; one package was open. (Tr. 35; *see also* Tr. 12.) A search of Rodriguez's vehicle did not discover any drugs but did discover the registration for the vehicle driven by Melendez. The registration was in the name of Rodriguez. (Tr. 21, 35-36, 39, 40-41.) Cash in the amount of $901.31 was seized from Rodriguez; he claimed it was from a pay check he had just cashed. (Tr. 41-42.)

Rodriguez, through his attorney, was given an opportunity to cross-examine the state's witnesses, and he did. He was also given an opportunity to call his own witnesses, but he declined to do so. (Tr. 48.) Later, the trial court determined that Ackley had probable cause for the stop of Rodriguez's vehicle. (Ex. 10.)

There are no grounds for arguing that Rodriguez was denied a full and fair hearing of his Fourth Amendment claims. He was represented by counsel, had the opportunity to

---

[13] Under questioning by the trial court, Ackley himself referred to the stop as "a felony vehicle stop," one precipitated by the occurrence of a felony. He distinguished that from a stop made due to a traffic violation. (Tr. 47.)

cross-examine the witnesses against him, and had an opportunity to call witnesses on his behalf. Nor does Rodriguez argue "egregious error" of the sort found in *Gamble*.

Rodriguez contends that he was not permitted to testify on his own behalf. The transcript reflects that his attorney waived Rodriguez's right to call witnesses, including Rodriguez himself. (Tr. 47.) Thus, his assertion to the contrary notwithstanding, Rodriguez had an opportunity to testify and did not avail himself of that opportunity.

As the mechanism provided by Ohio for the resolution of Fourth Amendment claims is adequate and presentation of Rodriguez's Fourth Amendment claim was in no way frustrated by a failure of that mechanism, Rodriguez's Fourth Amendment claim is not cognizable before this Court. For these reasons, Rodriguez's first ground for relief is dismissed.

## IV.

For the reasons given above, Rodriguez's second and third grounds for relief are dismissed as procedurally defaulted. Rodriguez's first ground for relief is dismissed as not being cognizable in habeas proceedings.

Thus, Rodriguez's entire petition is **DENIED** and **DISMISSED WITH PREJUDICE**. His motion to stay is also **DENIED as moot**. Further, the Court certifies that an appeal from this decision could not be taken in good faith and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. §§ 1915(a)(3), 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: March 20, 2012

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**